Good morning, Your Honors. May it please the Court, Lawrence Abelson on behalf of First Federal Bank of California. I thought it would be best to take a step back and take a look at the broad picture here, which is that this is a case about an insurance company trying to avoid its professional responsibility. It's not really a claim about two competing lien holders. First Federal Bank of California was a victim of fraud years ago, fraud perpetrated by Mark Chapman Tiffany, and we had obtained a judgment for non-dischargeability of debt against him. This was back in 1996. We recorded it and perfected it properly and have not yet been able to collect. And this is as against a professional insurance company, First American, which was paid for risk and is now invoking the equitable doctrine of equitable subrogation to avoid paying on that claim. We mentioned a number of different equitable maxims in our briefing, and I just wanted to remind the Court of a couple of them. The first is that to entitle one to subrogation, his equity should be strong and superior to those who oppose it. Another one that I wanted to highlight this morning was that as an equitable doctrine, subrogation aids the vigilant and not the negligent. What we have here are rulings by the Bankruptcy Appellate Panel and the Bankruptcy Court determining that a First American title in the name of Chevy Chase Bank should be entitled to take priority over First Federal Bank, notwithstanding the fact that it recorded first and interest in its lien attached first. If that's the case, then judgment creditors such as First Federal, whether they're victims of fraud or whatever other facts result in the judgment, will never get paid if a title insurer makes a mistake. The whole point of the recording statute is to put the world on notice that this property owner owes money to this creditor, and if there's a transfer of title or a new encumbrance or refinance, then this lien has to be paid off or otherwise dealt with. Well, let's suppose that instead of subrogation that Chevy had just assigned the right, assigned its lien. Nothing wrong with that, is there? They assigned the right to? Anybody. To equitable subrogation? No, no, no, no. I'm just saying you have a lien holder that's in place, and the question is whether or not there's, in this case, it's whether the title company has equitable subrogation, or at least that's one of the issues. But, I mean, the lien holder could have assigned its rights, too. Yes, that's true. So, I mean, when you say one can never recover and all these parade of horribles, lots of stuff happens in bankruptcy and otherwise where lien holders sell or assign their positions, and someone may be disappointed in it. I mean, that's sort of beside the point, isn't it? Well, that's true, Your Honor, but these issues that have arisen, they're not a creature of bankruptcy. I understand. And I understand what you're saying. I think that the primary focus here is that this is not just somebody who took over Chevy Chase's lien. This is the title insurer who was paid to insure the title at the time they gave these loans, and it made a mistake. And the wonderful thing about this record is that the facts are undisputed and the facts are clear, and I think First American does a great job in its response or its appellee's brief of acknowledging that fact. This, to me, is a classic case of I believe it's footnote five of Mort, the Ninth Circuit's decision in 1996, where they acknowledge the line of cases, the universal title, Coy v. Robb, and say that in Mort we didn't have a title insurance issue. This was just the refinance lender seeking equitable subrogation. There were no facts, and when you look at the underlying district court opinion that was reversed, the facts are clear that there was no title claim. There was no one. The title insurer was not involved. Here, it's eminently clear from the record that from the beginning, the title insurer has been the one pursuing this claim of equitable subrogation. And if we're going to look at whether or not the claimant is entitled to equitable subrogation, we have to look at the factors, and a couple of the key factors are culpable and inexcusable neglect, which no one disputes that the insurer engaged in here. The insurer missed the liens. That's what they were paid to find, and they missed them. And now what they're doing is they're saying, well, it's really not us. Don't look at Wabash. Don't look at universal title. Don't look at COI, because it really, it's not the title insurer. It's Chevy Chase. But all the, as the documents in the record are clear, that that's not who's pursuing it. What would be the difference if Chevy Chase had just assigned the claim to them as opposed to them making the equitable claim? You'd still be in the same position, still have the same arguments, wouldn't you? I think there's a distinction between, because Chevy Chase is not. No, what you're saying is this is unfair because they came in late, but I'm just saying as a matter of law, if Chevy Chase had just assigned the claim, you wouldn't have this argument. It's just by virtue of this procedure of equitable subrogation that you've got an argument that they shouldn't be subrogated, right? They're the ones pursuing the equitable subrogation claim, correct? Yes. And if they assigned it to whoever, another lender, private individual, and that individual then was the object of these execution sale proceedings and realized this problem, their position is the same as Chevy Chase's. But they also now have taken over the loan on notice of our existing lien, right? And assumedly they would also take the benefits of whatever insurance policy that Chevy Chase took. Your position is as long as Chevy Chase brings it for its own account without the benefit of insurance or assigning it to anybody else, it's okay. But if it were to assign it to either by equitable subrogation or it were to assign the lien to somebody else, they would take subject to your notice and therefore have a less preferred position? Is that what you're saying? No, I think they all have a problem. I think whether it's Chevy Chase, an assignee of Chevy Chase, it's title insurer. Well, what if Chevy Chase didn't have title insurance? If Chevy Chase came in here and said, okay, it is us. There's no title insurer involved. It's more like a mort situation, right? We'd still say this doesn't work. Why? There's a lot of interesting, unique factual circumstances in this case, and a lot of them luckily aren't terribly relevant for the appeal. But one of them is that from the beginning of Chevy Chase's involvement, they knew about the marriage. They knew about the fact that the Tiffanys both owned this property. And part of the refinance, part of the condition of the refinance was that they both go on title to clear, to make it very clear that from the beginning they've both owned. So when Chevy Chase gave the loan and they knew that Mr. Tiffany was the owner of the property, they were on notice of what was on the public record. And they were noticed on the fact that there was a judgment outstanding against Mr. Tiffany. The fact — I know the Court keeps wanting to bring it back to an assignee of Chevy Chase, but I think there's — No, I'm just — I'm just carrying your argument to its logical conclusion. Oh, okay. I'm not — I'm not — And I'm not saying that it does, and not to be combative, but I think there's a very interesting and important distinction between Chevy Chase and its title insurer. And that's — that's the focus of our briefing. That's the focus of the issue we're presenting, is that — Counsel, I'd like to — I'd like to take you on a little bit of a detour, a very — Oh, sure. A very brief detour. In our preparation, we noticed that under the bankruptcy rules, there should have been an adversary proceeding under Rule 7001. And it doesn't appear that the bankruptcy court conducted an adversary proceeding, which invokes all of the rules of the — the general rules of civil procedure. Did the parties waive a 7001 adversary proceeding? Or do you consider that it was in substance conducted? For as to which claim are we talking? This would have been — well, this would have been for the — on the priority and the lien holders, the priority of the lien holders. Under the — we proceeded under the — we were only in bankruptcy court because the judgment arose out of a — of a bankruptcy. But the bankruptcy court followed as required state law and state procedure for the — what initiated and started this whole thing was an application by First Federal to sell the property pursuant to our lien. As part of those proceedings, First American came in in the name of Chevy Chase, as did some others, saying, wait a minute, we're — we have priority. And it was through law and motion and oral argument that these liens were adjudicated. No one requested a special — an adversary. Was notice — was notice given during these proceedings to Bitcova or Sentinel, those parties on that side of this little remainder? Oh, yes. In fact, they were — because there's so many other issues, we — that wasn't the focus of the briefing here, is that, yes, they were participants. In the proceedings before the bankruptcy court. Yes. They were both there. They filed papers. And their — I think the bankruptcy court pretty much rejected their claims. Now — They didn't necessarily ask for — no one asked for an evidentiary hearing, did they? No. Well, I do recall — no, no one specifically asked for it. I think during one of the hearings — What the bankruptcy judge did is I see the record. He went ahead sort of like an adversary proceeding. You all were able to give written objections. You had oral argument, even allowed discovery through — through warrants. And then there was no objection by any party to this procedure. Correct. It looked like he was giving what he thought he needed to, even though he didn't call it an evidentiary hearing. Right. Yes, Your Honor. And I'm sorry. I don't mean to interrupt. I just — to the extent the excerpts of the record don't make it clear, this is — this was a — this was a proceeding that lasted quite a long time. And nine days hearing multiple — multiple hearings and nine days of testimony or proceedings. Yeah. It was over several months, several — And then you had a joint statement of facts, as I understand. Yes, Your Honor. And then any findings the bankruptcy judge had, as I understand, came out of those findings. It came out of all of the evidence, which included the joint statement. And then there was evidence that was obtained and submitted subsequent, pursuant to subpoenas. And I — hopefully that came through our briefing, was that we sought the production of documents from both Chevy Chase and First American because it became clear that this was a significant issue. And they first tried to block those efforts for what we thought were pretty obvious reasons, because if we were able to show the nexus between the two, what was really going on, they were going — they should — they were going and should have lost because the law was clear that title insurers should not be awarded this kind of equitable remedy. Let me ask you a practical question. Are you — are you the only two parties left standing in this? I mean, nobody else is going to get any money regardless, or do we know? That's correct, Your Honor. In other words, it's irrelevant what happens beyond the two of you. It's given the amount that was available for distribution. Yes, Your Honor. And just for some numbers, the — if it helps. Well, I'll take it. Go ahead. It's the bankruptcy court on deposits. I think it's approximately $800,000 that were the proceeds. Okay. And we're owed well in excess of that. Yeah. Okay. You've got about two and a half minutes left. Do you want to reserve or do you have a couple of other issues you want to address? Thank you for that warning. I would. Thank you. Thank you. Good morning, Your Honors. I'm Jim Stolker. I'm the attorney representing Chevy Chase Bank. One thing I can say unequivocally, I am representing Chevy Chase Bank here today. I'm not representing First American Title Insurance Company. First American Title Insurance Company is not now and has never been a party to this litigation. I've noticed with chagrin the fact that the briefing from appellant has almost all but excluded Chevy Chase from mention as a party to the lawsuit in deference to replacing it with First American Title Insurance Company. The issue simply is that the party seeking equitable subrogation here is Chevy Chase Bank. It always has been. The fact that there may be an issue where Chevy Chase has tendered a defense to its title insurer and the possibility that the title insurer is then providing as it is contractually obligated to a defense to its position, to Chevy Chase's position, is of no import to whether Chevy Chase is entitled to equitable subrogation. Your equitable subrogation issues on behalf of Chevy are different than one might have if the title insurance company had said, all right, we're paying you. We're going to either take an assignment or claim by right of subrogation the lien. Yes, that's correct. As a matter of fact, the BAP specifically said in its decision that the nexus between Chevy Chase and the duty of not indemnification but the duty of defense is as close as we get to any kind of relationship between equitable indemnification and the title insurance company. I mean, I gather as you sort these things out, I mean, what First Federal is saying is, look, Chevy's got to get paid, and so it's unfair for them to be equitably subordinated even though they have a different theory. I mean, that's kind of when you wash everything else away, isn't that what the theory was? And that if you're going to get paid because you didn't have notice of their lien or your title insurance company didn't have notice of the lien, if to the extent that equity actually applies in this case, then we ought to take that into consideration. Is that the way you view it? That's spot on. I think the issue then, by extension, is for First Federal to say that if you apply equity in any case, generally speaking, that if the party seeking equitable subrogation is insured, that automatically accepts them. It eliminates the possibility that they can seek equity because they, after all, have insurance. And that's an awful precedent to put before the State of the law to say that anyone who has insurance automatically loses in any first-party action against another party. And I don't think that standard changes simply because we're talking about equity here. Judge Walz has a question. I think we have your point there. There's an issue that I need your help on. I take it State law is going to apply here, and that would be California law? Yes. It's been a while since I practiced in California, but my recollection was that when community assets are used to buy property, if there's a judgment recorded against one of those people, that judgment follows the property. And even if you enter a deed, as they did here, from the husband to the wife, that doesn't do away with that attachment. And even if they sell the property, this recorded deed follows the property. That's my recollection of California law. Now, is that accurate? That is accurate. As you stated, Your Honor. Now, isn't that the difference between the essential difference between the bankruptcy court's finding and the BAP's finding? I mean, the bankruptcy court maybe not put it that way, but they had the judgment lien attached. The bankruptcy court held the judgment lien attached earlier in the process than the BAP did. That's right. But without unnecessarily complicating the issue here, we actually have two separate issues. We have the issue of Chevy Chase Bank, when it made its loan, paid off the world savings loan. Right. It also paid off the Sentinel Trust loan. The Sentinel Trust loan was not a purchase money loan. So if we take it only by virtue of the 2898 super priority California statute, then the only subrogation that Chevy Chase is entitled to would be world savings. Well, I don't know about that, but at least First Federal would come in before Sentinel under that. Yes. That's correct. I mean, your argument is even if the lien attached when they first acquired the property versus the purchase money security interest, if you have that by right of subrogation, that's where you fit in at least as to the primary loan. Yes. And that means that the community property issue doesn't even arise. It doesn't come into play unless we're talking specifically about the Sentinel Trust. And with regard to the Sentinel Trust, then we're talking about additional complicating issues about, well, what is the effect of the fact that when Melody Tiffany acquired the property, she acquired it as her sole and separate property? That was the state of the record at the time. And in order to emphasize that condition, Mark Tiffany even voluntarily gave an additional grant deed to Melody saying this is Melody's property. He wasn't even entitled to make that grant deed, but he did it anyway. And so the BAP said, well, yeah, the property could have been purchased by community property. The whole thing might have been a fraud on lenders that might come in, and specifically a fraud on First Federal with their judgment lien. But the issue is what did First Federal do about it, that that's a voidable transaction? The parties, the husband and wife, can declare that the property is anything they want it to be, but that can be a fraud. And if it's a fraud, it's voidable. And First Federal never, during the period of time from 1996 to 2001 and then to 2003, never did anything about it, didn't try to change that. I don't understand that they have to do that. As I understand California law, they have a right that is their right. And it's up to the parties, if they want to get rid of First Federal, to try and void First Federal, not the opposite way. What law says First Federal has to do anything other than show that they're right attached because they had it recorded? The problem is not between First Federal and Tiffany. The problem is what happens when you have a number of bona fide encumbrances or bona fide purchasers. But they're not bona fide. They are on notice of this judgment, so they're not bona fide. That's the problem. Well, it's not the notice of the judgment that they're concerned about. It's notice of the interest in the property. The bona fide purchasers that I'm talking about are the people that saw that the property was conveyed to Melody Tiffany as their sole and separate property. Those encumbrances or purchasers are entitled to rely on that part of the recorded documents. If that's wrong, if that statement, if that representation to the public and the public records is wrong because it's a fraud committed by Melody and Mark Tiffany, then that's something that First Federal has to clear from the record. But that's not anything we have. That doesn't deal with any issue in this case. Well, it does, again, if we plug it specifically into Sentinel Trust. All right. Let's assume for the sake of argument that the initial purchase had been in both names, okay? Your position still would be that you have a right to that interest because it's a purchase money security interest, correct? Am I correct on that or not? Yes, that is true. So, I mean, it's only as to Sentinel that it makes a difference because that was not a purchase money security interest. Right. All right. And then as we've said and as we've argued and as the BAP has affirmed for us is that because of the condition of the community property interest that even Sentinel, which was paid off by the Chevy Chase loan, is entitled to the fact of equitable subrogation. And that was different from the bankruptcy, Judge. Exactly, yes. Counsel, you don't The question is whether the bankruptcy judge or the BAP was correct on that issue. Yes, that's correct. You don't represent Sentinel here. I don't. So you don't really have an interest. You'd be just as happy defending the bankruptcy judge's decision as the BAP's decision. Is that correct? No. The difference is that we, Chevy Chase, would like to be subrogated to both the world savings deed of trust, which was purchase money, and the Sentinel. That portion of the Sentinel loan that was paid off. It was paid off. And not Sentinel itself. You want to ease first Federal out so you can come in second instead of third. We want to be first and second. First and second instead of first and third. Yes. I understand. I'd like to circle back to something I asked Mr. Abelson about, the 7001 proceeding, because that seemed to be on the BAP's mind. I'm looking at page 13 of the BAP's decision, which looks like it may be page 16 of the record. And the BAP cites the fact that an adversary proceeding was not initiated, and as evidence of the fact that because this was done, there was no proper determination that the transfer was void. And, therefore, it decides that the effective date of first Federal's judgment lien must be determined under State law because it did not conduct a 7001 proceeding. Did the parties – I assume that the parties did waive the 7001 proceeding. I doubt that the record shows an explicit waiver of the 7001 proceeding. But you went along with the proceeding. Nobody seemed to object. Nobody jumped up and said, hey, you can't do this. We need a 7001 proceeding. Absolutely. Okay. All right. But there was a 7001 proceeding. I'm sorry. There was a 7001 proceeding. In effect, there was. No, no. Well, I mean, I'm looking at order reopening adversary proceeding. What was that? I don't know, Your Honor. Yeah. I mean, what I thought the BAP was saying is that there, in fact, was an adversary proceeding that pertained to the segregation issues and so forth, but that the fraudulent transfer issues had not been commenced by adversary proceeding. The interesting procedural aspect was that the envelope in which this was litigated was the original application by First Federal to sell the property. Right. And there's nothing wrong with determining, at least in my view, priorities in a motion to sell itself. You don't have to commence that by adversary proceeding. And fairly early on, First Federal and Chevy Chase recognized that we really had no conflict of evidence here. What we needed to do was to put the issue of the law in front of the court, and we agreed on a settled statement of facts that did, in fact, do that. The interesting evolution of the case, however, is that we came before the court so often. An additional oral argument. The oral argument seemed to pull out additional things that people wanted to put before the court until, in fact, there was additional subpoena and additional information that exceeded the original stipulation of facts and found its way into the current record. But in terms of what we're talking about here, the final order that ensued from the bankruptcy court and went up to BAP, nobody objected to the form of the hearing, whether it was done by, as a court proceeding or an adversary proceeding, so forth, right? Absolutely right. And to the extent it's relevant in the BAP decision, they're talking about the fraudulent transfer, another challenge to fraudulent transfer under Chapter 7 of the Bankruptcy Code. 727 or whatever it is. Right. And, therefore, it was a State law, not a Federal law. Right. But it's our position that by the time everything was said and done and the dust had clearly settled on this matter, that both sides had put before the court as much as they wanted to about every issue. And that would include the fraudulent transfer. That would include the community property interests as well. And I'll just conclude, Your Honor, by indicating that the rule that I think that the First Federal wants to state here is that not only is First Federal entitled to some sort of priority here, but it's entitled to that priority as a result of the fact that Chevy Chase happened to have insurance. And it happened to have insurance based on the title insurer who had done something wrong by missing or by neglecting or by not finding a judgment lien. They're leaping way ahead. I mean, this is Chevy Chase asking for equitable subrogation, which was given by the Bankruptcy Court, was affirmed by the Bankruptcy Appellate Panel, and now they want to try the case against First American, suggesting that to have insurance is a bad thing. So thank you, Your Honor. Roboto? I have a lot to say. I'll try to make it very concise. I know my time is short. Quickly, with regard to the Sentinel Trust matter, I only even think we need to go very far into the fraudulent transfer realm because, as we argued in the book I'm sorry. With regard to Sentinel Trust, Arlene attached the moment Tiffany acquired an interest in the property, and that was in 01 when he and his wife acquired title. Whether or not he was on the grant deed, in our opinion, is not the relevant inquiry. The law is clear in California that once he acquires an interest, Arlene attaches the undisputed facts to clear that he had such an interest. The community acquired that property. Right. But, I mean, let's assume that World Savings was still in here and Chevy Chase wasn't. You'd have to concede that World Savings would be first. Yes. Second. Civil Code 2898, super priority. Right. They have the super priority lien. You only dispute whether they're entitled to take that position, the super priority lien. Yes. Yes. And I want to remind this Court that court after court, where there's been evidence of the participation, you can call it collusion, participation, involvement, whatever you want to say, of a title insurer, which there is in this case, has denied equitable separation, not awarded it. Why do you say it's collusion to say we're going to, you know, we'll, you set a claim, you defendant, we don't know the property, you know, we don't, of course, we don't know whether they're reserved of their rights or not. Well, actually, we do. It's in the record what they agreed to do. Oh, yeah. But the use of the word collusion, it's funny, you know, the bankruptcy appellate panel decided to pull something out of Black's Law Dictionary and use a very narrow definition of it. The standard isn't whether there's collusion or not. I think that the law that we put forth in our briefing makes it clear if there, whether it's collusion, involvement, participation, there is a distinction. This is equity. This is somebody saying that notwithstanding the California recording statutes, we jump ahead. It isn't automatic. And that's what Chevy Chase, First American, that's what they're doing here. They're saying, well, we refinanced, and so what if we missed it? It's no harm, no foul to First Federal because they're in the same position they were before. Well, that could always be the case. The whole point is that we recorded an abstract. We're entitled to be paid. They made a mistake. They should not be able to come into this Court and say, disregard it. Give it to us anyway. I mean, case after case has said it. I think that the Washington Supreme Court, I think that was most recently said, equitable subrogation should not apply in favor of a title company which guaranteed title while on notice of a prior judgment. The doctrine does not apply to relieve a title insurance company of its obligations because the company not only receives consideration for rendering an expert opinion but also for acting as an insurer of its accuracy. There is a major distinction there. Thank you, Your Honor. Thank you, Your Honor. Our oral arguments have been very helpful in this case. I want to thank you both for your briefs and argument, and we will be in recess for the morning.
judges: Wallace, Thomas, Bybee